JOHN G. MOORE v. THE STATE.

The distinction between express and implied malice has been thoroughly discussed in McCoy v. The State, 25 Tex., 33, and Ake v. The State, 30 Tex., 466.

Where the killing was without provocation or extenuating circumstances, it was the result of formed design, and bail was properly refused. (Paschal's Dig., Art. 2267, Note 672.)

APPEAL from Fayette. The case was tried before Hon. ISAAC B. MCFARLAND, one of the district judges.

The applicant was indicted for murder in Fayette county. Upon motion of the accused the case was continued, and he moved for bail, which motion was overruled, and he appealed. The evidence used at the examining court and on the motion was in the record. It is substantially as stated by the court. The deceased, with his party, was herding cattle; the applicant insisted on a steer being turned out of the drove, as he was a work-ox. This being denied by A. Jones the applicant gave him the lie, and immediately fired at A. Jones. The ball struck the brother of the deceased and killed him. Neither brother was armed. The killing was sudden, but without provocation. The applicant rode off, but was followed and arrested.

No briefs have been furnished to the *Reporter.*

CALDWELL, J.—There is but a single question to determine: was the killing done upon express or implied malice? If the former, the offense is capital and not bailable; if the latter, under our constitution, the prisoner is of right entitled to his discharge upon sufficient sureties.

The distinction between express and implied malice has been so thoroughly discussed in the exhaustive opinion of Judge ROBERTS, in McCoy v. The State, 25 Tex., 33, and Williams, Ake *et al.*, Austin term, 1867, [Ake v. The State, 30 Tex., 466,] that we deem it unnecessary to renew the discussion.

The applicant, mounted on a horse, approached the deceased and several others who were herding beeves on the prairie. It appears that the father of applicant had authorized Andrew Jones, a brother of the deceased, to take up two beeves and dispose of them in satisfaction of a debt. Two beeves had been thus selected and placed in the herd. The defendant insisted that one of the beeves was a work-ox, and should be turned out of the drove. The brother of deceased replied, that he "did not believe" it was a

work-steer, whereupon defendant called him d——d liar. Andrew Jones, the brother, unarmed and in his shirt sleeves, was in the act of dismounting when the defendant fired upon him, though the stronger belief is that the prisoner fired simultaneously with the opprobrious epithet applied.

The deceased, seeing the danger of his brother, started towards the defendant, with hands uplifted, in an imploring attitude. He was without arms. Upon reaching a distance of some three or four feet from the defendant he fired the fatal shot, and then another at his brother.

These are the material facts. There is not the slightest evidence that the deceased or his brother intended to assault the defendant or do him an injury. From aught that appears in the record, the killing was without the shadow of provocation, excuse, or extenuating circumstance. We need resort to no presumptions here. It is evident the killing was the result of a "formed design" in the mind of the prisoner, thus bringing the case within the rule laid down in the above-cited cases, to establish the existence of express malice at the time of the homicide.

It follows that the judgment of the district court ought not to be disturbed. It is therefore

AFFIRMED.